

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**SAFEMEDS SOLUTIONS, LLC, d/b/a
RX REMEDIES COMPOUNDING & WELLNESS
PHARMACY**                                              **PLAINTIFF**

VS.                            CIVIL ACTION NO.: 3:15cv202 CWR-LRA

**TOMMY SPELL, MEDWORX, LLC and
WADE WALTERS**                                          **DEFENDANTS**

## COMPLAINT

### JURY TRIAL DEMANDED

Plaintiff, SafeMeds Solutions, LLC, doing business as RX Remedies Compounding & Wellness Pharmacy, ("SafeMeds"), files this Complaint and demands a jury trial against Defendants, Tommy Spell, Medworx, LLC, and Wade Walters ("Defendants"), as follows:

### I.  PARTIES

1. Plaintiff, SafeMeds Solutions, LLC, doing business as RX Remedies Compounding & Wellness Pharmacy, is a Mississippi limited liability company with its principal place of business located in Ridgeland, Mississippi.

2. Defendant, Tommy Spell, ("Spell") is an adult resident citizen of the State of Mississippi.

3. Defendant, Wade Walters, ("Walters") is an adult resident citizen of the State of Mississippi.

4. Defendant Medworx LLC is a Mississippi limited liability company with its principal place of business located in Ridgeland, Mississippi.

## II. JURISDICTION AND VENUE

5. The court has jurisdiction over this action under the Computer Fraud and Abuse Act, 18 U.S.C.A. § 1030, pursuant to 28 U.S.C.A. § 1331. The court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C.A. § 1367.

6. Venue is proper in the Northern Division of the Southern District of Mississippi, since a substantial part of the events giving rise to Plaintiff's claims occurred in this district and division.

## III. FACTS

7. SafeMeds operates a compounding and wellness pharmacy focused on customized medications.

8. Plaintiff employed Defendant Tommy Spell as a pharmacist from June 2011 until August 1, 2014.

9. In addition, Tommy Spell became a member of SafeMeds' board of directors in February 2011 and served on SafeMeds' board of directors until leaving the company on August 1, 2014.

10. In April 2012, SafeMeds started a pharmaceutical compounding business.

11. Defendant Tommy Spell was an integral part of SafeMeds' development of its compounding business.

12. In connection with Spell's employment and status as a SafeMeds board member, Spell had access to SafeMeds' trade secrets and proprietary information, including compounding formulas customer lists, sales representative lists, sales representative contracts, commission schedules, contracts, incentive plans, reports, employee lists and other intellectual property, information and data.

13. Sometime in early 2014, Spell and Walters began conspiring to hijack Plaintiff's business.

14. As part of their scheme, Spell, Walters and others formed or purchased Medworx in April 2014.

15. While still employed by SafeMeds, Spell accessed Safemeds' trade secrets and proprietary information and divulged the information to Walter, Medworx and others.

16. By May 2014, Medworx was entering into contracts with SafeMeds' clients who were referred to Medworx by Spell.

17. By May 2014, Medworx was entering into contracts with SafeMeds' clients who were referred to Medworx by Spell.

18. Spell continued to be employed by SafeMeds and serve on its board of directors until August 1, 2014. During this time period, Defendants secretly conspired to steal SafeMeds' business using trade secrets and proprietary information stolen by Spell and provided to the other Defendants.

19. Both before and after Spell left SafeMeds, Defendants interfered with SafeMeds' business relations.

3

20. As a result of Defendants stealing SafeMeds' customers, sales representatives, trade secrets and other intellectual property, SafeMeds' net income declined from $811,260 in June 2014 to $244,867 in July 2014, $73,359 in August 2014 and $86,737 in September 2014.

21. SafeMeds has suffered and will continue to suffer lost revenue in the future as a result of Defendants' improper actions.

## IV. CAUSES OF ACTION

### A. Violation of the Computer Fraud and Abuse Act, 18 U.S.C.A. § 1030

22. Defendant Spell impermissibly accessed files stored on SafeMeds' internal computer system, which is not open to the public, in order to view and impermissibly obtain its contents and copy material maintained on this internal system.

23. Defendant Spell accessed SafeMed's computer system, which is protected by passwords and other security features, and as such, Spell's access to Safemeds' sales representative lists, contracts with sales representatives, employee lists, price lists, customer lists, commission schedules, contracts, incentive plans and other proprietary information was not authorized by SafeMeds.

24. Defendant Spell used his unauthorized access to SafeMeds' computer system to obtain documents and data which Defendants intended to use, and have used, to further their scheme to intentionally interfere with SafeMeds' customers and contracts and its prospective economic relations.

25. Defendants' use of the unlawfully obtained information has resulted in an unfair competitive advantage in the marketplace and Defendants' unjust enrichment at SafeMeds' expense.

26. SafeMeds has suffered damages as a result of Defendants' actions in violation of the Computer Fraud and Abuse Act well in excess of $5,000.00.

### B. Violation of Miss. Code Ann. § 75-26-1, et seq.

27. SafeMeds' confidential, proprietary and trade secret information includes, but is not limited to, its customer lists; its customers' personal information and identification; price lists; formulas; sales representative lists and other proprietary information.

28. This information is legally protected as a trade secret under the Mississippi Trade Secrets Act, Miss. Code Ann. § 75-26-1, *et seq.*, because SafeMeds derives economic value from this information not generally known to the public and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and because the information is the subject of SafeMeds' reasonable efforts to maintain secrecy.

29. Defendants acquired SafeMeds' trade secrets by improper means and without authorization.

30. Defendants have used SafeMeds' trade secrets without express or implied consent.

31. At the time Defendants acquired SafeMeds' trade secrets, Defendants knew or had reason to know that the information was derived through improper means and misappropriation and was acquired under circumstances giving rise to a duty to maintain secrecy of the information and not use it in direct or indirect competition with SafeMeds.

32. Defendants' misappropriation is part of an effort to unfairly compete with SafeMeds in the marketplace and is, therefore, willful and malicious.

33. SafeMeds has suffered damages as a result of Defendants' violation of Miss. Code Ann. § 75-26-1, *et seq.*

C. **Breach of Implied-in-Law Contract**

34. Spell was subject to an implied contract with SafeMeds to keep confidential trade secrets and other confidential and proprietary information acquired during his employment with SafeMeds.

35. Spell had an implied obligation to not use or divulge SafeMeds' trade secrets and other confidential and proprietary information both during and after his employment with SafeMeds for his own benefit or the benefit of a competitor of SafeMeds, including Medworx.

36. Spell breached his implied-in-law contract with SafeMeds by conspiring with the other Defendants to divulge SafeMeds' trade secrets and other proprietary information and use it to steal SafeMeds' business.

37. SafeMeds suffered damages as a result of Spell's breach of implied-in-law contract.

### D. Breach of Fiduciary Duty

38. As a member of SafeMeds' board of directors, Spell had a fiduciary duty to SafeMeds.

39. Spell breached his fiduciary duty to SafeMeds by using its trade secrets and proprietary information for his own benefit, divulging it to the other Defendants and conspiring with the other Defendants to steal SafeMeds' business.

40. SafeMeds suffered damages as a result of Spell's breach of fiduciary duty.

### E. Breach of Duty of Loyalty

41. While employed by SafeMeds, Spell was subject to a duty of loyalty that prohibited him from competing with SafeMeds during his employment.

42. Spell breached his duty of loyalty to SafeMeds by competing with SafeMeds while he was still an employment of SafeMeds.

43. SafeMeds suffered damages as a result of Spell's breach of duty of loyalty.

### F. Misappropriation

44. SafeMeds invested substantial time, skill and money in developing its trade secrets, proprietary information and other information related to its compounding business.

45. Defendants appropriated and used SafeMeds' property at little or no cost to Defendants.

46. Defendants' appropriation and use of SafeMeds' property was without the authorization or consent of SafeMeds.

47. SafeMeds can establish that it has been injured by Defendants' conduct.

### G. Intentional and/or Negligent Interference with Prospective Business Advantage

48. SafeMeds had economic relationships with sales representatives with probable economic benefit to SafeMeds.

49. Defendants knew of the existence of SafeMeds' relationships with its sales representatives.

50. Defendants intentionally interfered with Safemeds' relationships by tortious means or wrongful acts.

51. In addition, Walters and Medworx intentionally interfered with SafeMeds' relationship with Spell.

52. An actual disruption of SafeMeds' economic relationships occurred.

53. SafeMeds was damages as a result of Defendants' acts.

### H. Civil Conspiracy

54. Defendants formed and operated a conspiracy related to misappropriating SafeMeds' trade secrets, proprietary information, other information and relationships.

55. Defendants committed acts in furtherance of their conspiracy.

56. SafeMeds suffered damages as a result of Defendants' conspiracy.

I.   **Unjust Enrichment**

57.   Defendants have benefitted as a result of their receipt of SafeMeds' trade secrets, proprietary information, other information and relationships.

58.   Defendants have wrongfully gained and been unjustly enriched as a result of their misappropriation and interference with SafeMeds' relationships.

59.   SafeMeds should be awarded all profits earned by Defendants to compensate SafeMeds for Defendants' unjust enrichment.

V.   **DAMAGES**

60.   SafeMeds seeks all actual damages that it is entitled to recover under the above causes of action.

61.   SafeMeds seeks punitive damages against Defendants for their intentional, willful and wanton misconduct.

62.   SafeMeds seeks any other actual, compensatory, consequential, incidental and punitive damages to which it is entitled to recover.

63.   SafeMeds seeks attorneys' fees and expenses, costs, pre-judgment interest, post-judgment interest and any other relief deemed appropriate by the Court.

**WHEREFORE,** SafeMeds demands judgment against Defendants in an amount in excess of $75,000 for compensatory damages, punitive damages, costs, attorney's fees and pre and post judgment interest.

This the 17th day of March, 2015.

                              Respectfully Submitted,

                              SafeMeds Solutions, LLC

                              By Its Attorneys,

                              _____
                              PHILIP W. THOMAS
                              MS Bar No. 9667

PHILIP W. THOMAS LAW FIRM
747 N. Congress Street (39202)
Post Office Box 24464
Jackson, MS 39225-4464
(601) 714-5660
pthomas@thomasattorney.com

Patrick C. Malouf
PORTER & MALOUF
825 Ridgewood Road
Ridgeland, Mississippi 39157
Post Office Box 12768
Jackson, Mississippi 39236
(601) 957-1173
patrick@portermalouf.com